# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BELLINZONI, S.r.L,**

                               **Plaintiff,**

**v.**                                           **Case No:  6:18-cv-1971-Orl-22GJK**

**BELL ITALY SOLUTION CORP.,**

                               **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **BELLINZONI, S.R.L.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT, INCLUDING INJUNCTIVE RELIEF SOUGHT, AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 51)** |
| **FILED:** | **November 26, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.      BACKGROUND.

On January 28, 2019, Plaintiff filed an Amended Complaint against Defendant seeking monetary damages of $51,661.80 plus interest, injunctive relief, and statutory and treble damages for: 1) breach of contract; 2) trademark infringement and false advertising under the Lanham Act; 3) cybersquatting under the Lanham Act; 4) deceptive and unfair trade practices under Florida law; and 5) tortious interference with business relationships.  Doc. No. 23.

---

[1] Magistrate Judge David A. Baker substituting for Magistrate Judge Gregory J. Kelly.

Plaintiff develops and manufactures chemical preparations, including adhesives, coatings, detergents, waxes, and paint removers. *Id.* at ¶¶ 7, 12. The products are manufactured exclusively in Italy and are distributed to more than 80 countries, including the United States. *Id.* at ¶¶ 13-14. Plaintiff owns a trademark for Bellinzoni in the United States which covers chemical preparations, detergents, polishing wax, floor wax and paint removers. *Id.* at ¶ 15; Doc. No. 51-1.

Defendant was a non-exclusive distributor for Plaintiff. Doc. No. 23 at ¶¶ 17-18. Beginning in early 2018, Plaintiff began receiving complaints from customers that Defendant was not delivering products timely and was raising prices drastically. *Id.* at ¶ 21. Plaintiff also learned Defendant was manufacturing products in Brazil, selling them under the Bellinzoni trademark, and advertising these products as "Made in Italy." *Id.* at ¶¶ 23-36. Defendant terminated the parties' relationship via letter dated July 20, 2018. *Id.* at ¶¶ 27-28. Plaintiff accepted the termination and demanded Defendant cease and desist from any and all use of Bellinzoni's trademark and recall products sold without Plaintiff's authorization. *Id.* at ¶¶ 29-30. Plaintiff also demanded payment of past due invoices totaling $51,661.80. *Id.* at ¶¶ 29-30. Plaintiff alleges Defendant continues to sell Bellinzoni products, uses the trademark name in emails and invoices, holds itself out as an authorized licensee, and continues to use the domain name bellinzoniusa.com. *Id.* at ¶¶ 31-35.

Defendant was served on November 16, 2018. Doc. No. 7. On February 11, 2019, Defendant filed an Amended Answer, Affirmative Defenses, and a Counterclaim. Doc. No. 27. On October 30, 2019, the Amended Answer, Affirmative Defenses, and a Counterclaim was stricken after Defendant's counsel withdrew and Defendant failed to secure new counsel. Doc. No. 48. On October 31, 2019, a Clerk's default was entered against Defendant. Doc. No. 49. On November 26, 2019, Plaintiff filed a Motion for Entry of Default Final Judgment against Defendant (the "Motion"). Doc. No. 51. Plaintiff seeks $51,661.80 in damages for breach of contract based on the outstanding invoices, prejudgment

interest, statutory damages of $20,000 for cybersquatting, transfer of the domain name bellinzoniusa.com to Plaintiff, a permanent injunction against Defendant as set forth in Plaintiff's proposed order, and attorney's fees and costs.  Doc. No. 51 at 14-15.

## II.   STANDARD OF REVIEW.

When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.  Fed. R. Civ. P. 55(a).  The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court.  Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered.  *Nishimatsu Construction v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]  A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal.  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (*citing Nishimatsu*, 515 F.2d at 1206).   Essentially, Defendant admits these well-pled allegations by virtue of its default.  *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).

Federal Rule of Civil Procedure Rule 55(b)(2) provides the Court with the authority to enter a default judgment.  "As a general rule, the court may enter a default judgment awarding damages without a hearing only if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits." *Directv, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 2004) (citing *Directv, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003)).

## III.   ANALYSIS.

### A.   Liability.

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the former Fifth Circuit before October 1, 1981.

1.      *Breach of Contract*

Under Florida law, the elements of a breach of contract are: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999). The facts alleged in the Amended Complaint are sufficient to establish a valid agreement for the purchase and sale of goods, Defendant's breach of the agreement by failing to pay, and damages. Doc. Nos. 23 at ¶ 20; 23-2; 23-5 at 2; 51-2. However, a default judgment "may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 858 (5th Cir. 1979); *see also Jenkins v. Clerk of Court*, 150 F. App'x 988, 989 (11th Cir. 2005)[3] (unpublished) (same); *Suntrust Bank v. Milano*, No. 8:10-cv-1258, 2010 U.S. Dist. LEXIS 84488, at *1-2 (M.D. Fla. Jul. 15, 2010) (where plaintiff's complaint for breach of contract sought liquidated sum, "[p]laintiff is entitled to final judgment for the liquidated sums . . . which are capable of mathematical computation or ascertainment from definite figures . . . in the documentary evidence or in detailed affidavits.")

Here, Plaintiff seeks a fixed amount of liquidated damages based on the invoices issued to Defendant for its purchase of Plaintiff's products. Doc. Nos. 23, 51. The invoices and demand letter attached to the Amended Complaint and the Declaration of Roberto Vescovo, Plaintiff's Chief Executive Officer, support Plaintiff's claim for liquidated damages in the amount of $51,661.80. Doc. Nos. 23-2; 23-5 at 2-3; 51-2. The Court recommends default final judgment be granted in the amount of $51,661.80 in favor of Plaintiff on its breach of contract claim.

2.      *Trademark Infringement and False Advertising*

Plaintiff seeks to hold Defendant liable for trademark infringement and false advertising pursuant

---

[3] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

to 15 U.S.C. §§ 1114 and 1125 based on Defendant's misuse of Plaintiff's trademark.  Doc. Nos. 23; 51.

Under the Lanham Act, a civil action for infringement may lie if a person uses in commerce any "reproduction, counterfeit, copy, or colorable imitation of a registered mark which is likely to cause confusion, or to cause mistake, or to deceive" without consent.  *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (internal quotations omitted).   In order to prevail on the trademark infringement claim, Plaintiff must establish: 1) that it had a valid trademark; and 2) that Defendant adopted an identical or similar mark such that consumers would likely confuse the two.  *Id.*; *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216 (11th Cir. 2000).

A plaintiff may establish a valid trademark by demonstrating the trademark has incontestable status.  15 U.S.C. § 1065, 1115(b).    Generally, incontestability provides conclusive evidence of the validity of the trademark, the registrant's ownership of the same, and the registrant's exclusive right to use the trademark in commerce.  *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1358 (M.D. Fla. 2017) (quoting *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & Malta v. Fla. Priory of Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order*, 809 F.3d 1171, 1183 (11th Cir. 2015)).   A likelihood of confusion is determined by considering:

> (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing mark; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F. 3d 1242, 1255 (11th Cir. 2016).

Plaintiff also argues that Defendant engaged in false advertising in violation of  15 U.S.C. § 1125.[4]

---

[4] Although Plaintiff does not specifically state a claim under 15 U.S.C. 1125(a) in the Amended Complaint, Plaintiff has

Section 1125 prohibits false designation of origin and false advertising.  15 U.S.C. § 1125.  To establish false advertising, Plaintiff must show:

> (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been – or is likely to be – injured as a result of the false advertising.

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010).

Plaintiff alleges that it has a valid trademark that is incontestable.  Doc. Nos. 23 at 4; 51 at 6; 51-1.  Plaintiff alleges Defendant used that mark without consent, sold counterfeit goods bearing that mark, and that the sale of the counterfeit products would likely confuse consumers.  Doc. No. 23 at 9-10.  Plaintiff alleges that Defendant's commercial advertising and promotion of products that were made in Brazil instead of in Italy as authentic Bellinzoni products are likely to have deceived consumers about the geographic origin of Plaintiff's products and caused confusion.  Doc. No. 23 at 10-11.  Plaintiff alleges that Defendant's actions were willful, malicious, and in bad faith.  *Id.* at 22.

Based on the well-pled allegations of Plaintiff's Amended Complaint, the Court finds the Plaintiff has sufficiently alleged a claim for trademark infringement against Defendant.  Similarly, Plaintiff has sufficiently alleged a claim for false advertising under the Lanham Act. The Court recommends entry of default judgment against Defendant on these claims.

### 3.    *Cybersquatting*

Cybersquatting "occurs when a person other than the trademark holder registers the domain name

---

sought a default judgment against Defendant for false advertising under that part of the Lanham Act.  Doc. Nos. 23 at 9-10; 51 at 7-8.  A review of the Amended Complaint reveals that Plaintiff has alleged facts in its Amended Complaint that identify Defendant's misrepresentation of the geographic origin of Bellinzoni products, alleges that Defendant engaged in false advertising and marketing regarding the origin of those counterfeit products, and Defendant's actions had the capacity to deceive consumers on this basis.  *Id.*  Thus, while the statute is not specifically identified, a claim for false advertising has been sufficiently alleged within Plaintiff's trademark claim to be addressed.

of a [well-known] trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004). A person shall be liable to the owner of a trademark if that person "has a bad faith intent to profit from that mark, including a personal name which is protected as a mark . . . and traffics in or uses a domain name that . . . in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark. 15 U.S.C. § 1125(d)(1)(A). [5]

To establish a claim under the ACPA, Plaintiff must demonstrate: 1) it has a valid trademark; 2) its marks are distinctive or famous; 3) the offending domain name is identical to or confusingly similar to the owner's mark; and 4) Defendant used, registered, or trafficked in the domain name; 5) with a bad faith intent to profit. *WFTV, Inc. v. Maverik Prod. Liab. Co.*, No. 6:11-cv-1923, 2012 U.S. Dist. LEXIS 86137, at *22 (M.D. Fla. Apr. 19, 2013) (citing *Sound Surgical Techs., LLC v. Rubinstein*, 734 F. Supp. 2d 1262, 1275 (M.D. Fla. 2010)). "Registration of a trademark establishes a rebuttable presumption that it is distinctive." *Id.* There are nine factors to consider when determining bad faith, including whether the alleged cybersquatter has:

> (1) intellectual property rights in the domain name; (2) used a domain name that consists of the legal name of a person; (3) used a domain name previously in connection with the bona fide offering of goods or services; (4) bona fide noncommercial or fair use of the mark; (5) intends to divert customers from the mark owner's location to a site that could harm the good will represented by the mark; (6) offered to sell the domain name to the mark owner; (7) provided material and false contact information when registering for the domain name; (8) registered or acquired multiple domain names which he knows are identical or confusingly similar to the marks of others; or (9) used a domain name that incorporates a distinctive or famous mark.

*Hunter Residential Servs., LLC v. AAA Randpro Plumbing*, No. 8:16-cv-1311, 2017 U.S. Dist. LEXIS

---

[5] Anticybersquatting Consumer Protection Act ("ACPA").

116437, at *10-11 (M.D. Fla. Feb. 21, 2017) (quoting *Eagle Hosp. Physicians, LLC*, 509 F. Supp. 2d at 1348).  "[A] bad faith intent to profit from a domain name can arise either at the time of the registration or at any time" after registration.  *Sound Surgical Techs., LLC*, 734 F. Supp. 2d at 1277.

Plaintiff alleges that Defendant has violated 15 U.S.C. § 1125(d) in that it continues to use the domain name bellinzoniusa.com after Defendant terminated its business relationship with Plaintiff and is no longer authorized to sell Plaintiff's products.  Doc. No. 23 at 11.  Plaintiff alleges that the domain name is nearly identical to, or confusingly similar with, the Bellinzoni trademark.  *Id.*  Plaintiff alleges Defendant continues to use the domain name to divert customers from Plaintiff and continues selling Plaintiff's products via the domain name after Defendant terminated the relationship, and even though Defendant no longer has authorization to do so.  *Id.*

The Court finds that Plaintiff has sufficiently alleged Defendant's bad faith intent to profit and divert customers from Plaintiff.  Further, it would require a "quantum leap of imagination" to believe that a user of the internet accessing bellinzoniusa.com would not associate it with Plaintiff's famous mark. *See Victoria's Cyber Secret LTD. P'Ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1347 (S.D. Fla. 2001) (finding that an internet user would likely associate the domain names at issue with Victoria's Secret, a famous trademark).  Plaintiff has demonstrated that Defendant continues to pervasively engage in cybersquatting and other acts of infringement, despite terminating the parties' business relationship, being aware of Plaintiff's objections, and being aware of this lawsuit.  Doc. Nos. 2; 23-4; 23-5 at 3; 23-6; 23-7.  Based on the well-pled allegations of Plaintiff's Amended Complaint, the Court finds Plaintiff has sufficiently pled a claim for cybersquatting against Defendant and recommends entry of default judgment on this claim.

### 4.  *Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")*

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair

or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  To state

a claim under FDUTPA a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and

(3) actual damages.  *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*,  No. 6:18-cv-1088, 2018 U.S.

Dist. LEXIS 1822132, at *14 (M.D. Fla. Oct. 24, 2018) (citing *Caribbean Cruise Line, Inc. v. Better

Business Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015)).  "An act or practice

is deceptive if likely to mislead the consumer acting reasonably in the circumstances to the consumer's

detriment."  *Westgate Resorts, Ltd. v. Castle Law Group, P.C.*, No. 6:17-cv-1063, 2020 U.S. Dist. LEXIS

9001, at *22 (M.D. Fla. Jan. 2, 2020) (quoting *Al Amjad Ltd. v. Ocean Marine Engines, LLC*, No. 3:16-

cv-234, 2017 U.S. Dist. LEXIS 57398, at *10 (M.D. Fla. Apr. 14, 2017)).  An act is unfair if "it causes

consumer injury that is substantial, not outweighed by any countervailing benefits to consumers or

competition, and one that consumers themselves could not have reasonably avoided."  *Id.*

Plaintiff argues that Defendant's actions constitute a violation of FDUTPA.  Doc. Nos. 23; 51 at

10.  Plaintiff alleges that Defendant, a Florida for-profit corporation with its principal place of business in

Orlando, held itself out as an authorized distributor of Plaintiff when it was not, mislabeled products

produced in Brazil as authentic Bellinzoni products "Made in Italy," offered them to consumers

nationwide, and that Defendant did so even after this lawsuit was filed.  Doc. Nos. 23 at 12-13; 23-3; 51

at 10.  Based on the well-pled allegations of Plaintiff's Amended Complaint, the Court finds the Plaintiff

has sufficiently pled Defendant violated FDUTPA and recommends entry of a default judgment on this

claim.

### 5.   *Tortious interference with business relationships*

To establish tortious interference with a business relationship in Florida, a plaintiff must

demonstrate:  "(1) the existence of a business relationship, (2) the defendant's knowledge of that

relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting

from the breach of the relationship." *Vibo Corp. v. Us Flue-Cured Tobacco Growers*, 762 F. App'x 703, 706 (11th Cir. 2019) (quoting *Dunn v. Airline Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999)).

Plaintiff has alleged the existence of business relationships with existing customers in the United States, that Defendant was aware of those relationships, and that Defendant falsely blamed its lack of product and delays in delivery to those customers on Plaintiff after Defendant was no longer authorized to sell Plaintiff's product and no longer had access to inventory.  Doc. Nos. 23 at ¶ 23; 23-6; 51 at 9-10. Plaintiff claims it suffered damage to its reputation and good will, and that Plaintiff has had to devote time and resources to repairing those relationships.  Doc. Nos. 23 at ¶ 23, 23-6; 51 at 9-10.  Based on the well-pled allegations of Plaintiff's Amended Complaint, the Court finds Plaintiff has sufficiently pled a claim for tortious interference with business relationships against Defendant and recommends entry of default judgment on this claim.

### B.    Relief Requested

#### 1.    Injunctive Relief

While Plaintiff's Motion does not substantively address the injunctive relief requested in the Amended Complaint, Plaintiff does request that the Court enter an attached proposed default judgment that includes a permanent injunction against Defendant.  Doc. Nos. 51 at 15; 51-4.  A *preliminary* injunction may be appropriate if the moving party shows that: 1) it has a substantial likelihood of success on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest.  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).  The standard for a *permanent* injunction is the same as for a preliminary injunction except that the movant must show "actual success on the merits" instead of a "likelihood of success."  *Id.* (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law.   15 U.S.C. § 1116(a).   In trademark infringement actions, injunctive relief is often appropriate because: 1) "there is no adequate remedy at law to redress infringement and [2]) infringement *by its nature* causes irreparable harm."   *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (citing *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)).   Further, courts have generally recognized that in such cases, the public interest is "paramount."   *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991).   Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation."   *Id.* (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

Here, based on the well-pled allegations of the Amended Complaint, Plaintiff has established that Defendant's actions, by their nature, cause irreparable harm to Plaintiff and that it has no adequate remedy at law.   Doc. No. 23.   The Court finds that permanent injunctive relief is appropriate here and recommends granting the permanent injunction as requested in the proposed order.   Doc. No. 51-4.

## 2.   *Statutory Damages and Transfer of Domain Name*

Plaintiff seeks statutory damages and transfer of the domain name bellinzoniusa.com for Defendant's violation of the ACPA.   Doc. Nos. 23; 51.   Section 1117(d) provides that in cases involving the use of a counterfeit mark in connection with a sale, offering or distribution, the plaintiff "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . . an award of statutory damages [of] . . . not less than $1,000 and not more than $200,000 per counterfeit mark per  type of good or services sold. . . ."   If the use is willful, a plaintiff make seek not more than $2,000,000.   *Id.*   A trademark infringement is "willful" when "the infringer acted with actual

knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Sream, Inc. v. ASAT Inc.*, No. 18-14258, 2019 U.S. Dist. LEXIS 62535, at *10 (S.D. Fla. Apr. 11, 2019) (quoting *Petmed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004)) (internal quotation marks omitted).  The Court has wide discretion to determine the amount of statutory damages. *Petmed Express, Inc.*, 336 F. Supp. 2d at 1219.

Here, Plaintiff seeks an award of $20,000 in statutory damages and transfer of the domain name to Plaintiff.  Doc. Nos. 23; 51.  Based upon a review of the entire record, the Court finds that an award of $20,000 is reasonable and just, and recommends Plaintiff be awarded damages in that amount.  The violations shown here are neither trivial so as to suggest a nominal award, nor so pervasive or debilitating (on this record) so as to suggest an award toward the high end.

The Lanham Act provides for the forfeiture or cancellation of a domain name or a transfer of the domain name to the owner of the trademark.  15 U.S.C. § 1125(d)(1)(C).  The Court recommends that Defendant be ordered to transfer the domain name bellinzoniusa.com to Plaintiff.

### 3.    *Prejudgment Interest, Attorney's Fees and Costs*

Plaintiff seeks prejudgment interest on its unpaid invoices from the date each invoice was due. Doc. Nos. 23; 51 at 11-13.  "State law determines whether a successful litigant is entitled to prejudgment interest." *Seb S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 793 (11th Cir. 2005).  In Florida, "[p]rejudgment interest is available from the date performance was due under the contract, as damages are considered liquidated as of the date of breach, to the date of final judgment. *Winn-Dixie Stores, Inc. v. Unicous Mktg.*, No. 3:14-cv-128, 2014 U.S. Dist. LEXIS 90865, at *2 (M.D. Fla. Jul. 1, 2014) (citing *Lumbermens Mut. Cas. Co. v. Percefull*, 653 So. 2d 389, 390 (Fla. 1995)).  The Court recommends awarding prejudgment interest on the outstanding balance of the invoices.   Prejudgment interest should be awarded on the $3,806.60 balance from February 2, 2018 through the date of the Court's judgment, and from April 29,

2018, on the $47,855.20 invoice balance through the date of the Court's judgment.[6]

Finally, Plaintiff seeks an award of attorney's fees, costs, and non-taxable costs and asks the Court to find it is entitled to such an award under 15 U.S.C. § 1117(a) and section 501.211(2), Florida Statutes. Doc. No. 51 at 15-18. Under 15 U.S.C. § 1117, Plaintiff may recover the costs of the action. The costs of the action are generally those recoverable under 28 U.S.C. § 1920. *Sream, Inc. v. Rayhan & Aayan Corp.*, No. 18-22507-Civ, 2018 U.S. Dist. LEXIS 201472, at *10 (S.D. Fla. Nov. 27, 2018). Under FDUTPA, a prevailing party may also recover costs beyond those permitted by 28 U.S.C. § 1920. Fla. Stat. § 501.2105(1)-(4). Thus, while Plaintiff is entitled to costs under both 15 U.S.C. § 1117(a) and Florida Statute § 501.2105, Plaintiff must file a proper motion seeking those costs within the prescribed time after a final judgment is entered in this matter.

Attorney's fees may be awarded under the Lanham Act in "exceptional" cases. 15 U.S.C. § 1117(a); *Hunter Res. Servs., LLC*, 2017 U.S. Dist. LEXIS 116437, at *14-15. "[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Zamperla, Inc. v. Golden Horse Amusement Equip. Co.*, No. 6:10-cv-1718, 2015 U.S. Dist. LEXIS 189741, at *9 (M.D. Fla. Nov. 30, 2015) (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC*, 572 U.S. at 554.

Under FDUTPA, a prevailing party may recover reasonable attorney's fees from any civil

---

[6] Plaintiff calculated the prejudgment interest through September 30, 2019 to be $4,638.64, and then at $9.75 per day through December 31, 2019. Doc. No. 51 at 11-13. Thus, through the end of 2019 the total prejudgment interest would be $5,535.64. Beginning January 1, 2020, the judgment interest rate changed to 6.83% per annum. Current Judgment Interest Rates, *available at* https://www.myfloridacfo.com/Division/AA/LocalGovernments/Current.htm.

litigation "resulting from an act or practice involving a violation of this part" after judgement in the trial court and exhaustion of all appeals.  Fla. Stat. §§ 501.211(2), 501.2105.   An award of such fees is within the discretion of the Court.  *Chow v. Chak Yam Chau*, 640 F. App'x 834, 838 (11th Cir. 2015).  The Court considers various equitable factors, including:

> (1) the scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions – including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless; (6) whether the defense raised a defense mainly to frustrate or stall; (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Id.* at 839 (quoting *Humane Soc'y of Broward Cty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971-72 (Fla. 4th DCA 2007)).

Plaintiff argues it is entitled to attorney's fees under section 1117(a) based on the substantive strength of its case, in particular the fact that Defendant continued to use Plaintiff's trademark and the related domain name after Defendant terminated its non-exclusive distributorship with Plaintiff.  *Id.* at 16-17.  Plaintiff argues that an award of attorney's fees is appropriate under FDUTPA as a deterrent to similar conduct and based on the strength of its case. *Id.*  at 17-18.

Based on a review of the record in this case, the Court finds that Plaintiff, as the prevailing party, is entitled to recover reasonable attorney's fees under both 15 U.S.C. § 1117(a) and Florida Statute § 501.2105.   The Court finds that this is an exceptional case under the Lanham Act given the substantive strength of Plaintiff's position, including the incontestable nature of the trademark, Defendant's knowledge that Plaintiff had a valid trademark, and Defendant's willful misuse of the trademark both before and after it terminated the parties' business relationship.  This conclusion is bolstered by Defendant's abandonment of the defense of the case. Similarly, the Court finds that Plaintiff is entitled to an award of attorney's fees under Florida Statute § 501.2105 for the same reasons.   Thus, it is

recommended that the Court find Plaintiff is entitled to attorney's fees.

Therefore, it is **RECOMMENDED** that the Motion (Doc. No. 51) be **GRANTED** as follows:

1.      A default final judgment be entered against Defendant on the Amended Complaint;

2.      Damages in the amount of $51,661.80, plus prejudgment interest, be awarded against Defendant in favor of Plaintiff on its breach of contract claim;

3.      Statutory damages of $20,000 be awarded to Plaintiff against Defendant;

4.      Defendant be required to transfer the domain name bellinzoniusa.com to Plaintiff within thirty (30) days from the date of the Court's Order;

5.      A permanent injunction be issued against Defendant and in favor of Plaintiff in the form provided in the proposed order attached to Plaintiff's Motion (Doc. No. 51-4);

6.      The Court find Plaintiff is entitled to reasonable attorney's fees and costs pursuant to Florida Statute § 501.2105 and 15 U.S.C. § 1117 and retain jurisdiction to determine (upon proper application) the amount of attorney's fees and costs to which Plaintiff is entitled; and

7.      The Court retain jurisdiction over the case for sixty (60) days to ensure compliance with the permanent injunction and transfer of domain name.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on January 31, 2020.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties